# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLIFFORD CAMPBELL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No.:**    21-812 |
| | : | |
| **ST. MORTIZ SECURITY SERVICES, INC.,** | : | |
| **Defendant.** | : | **COMPLAINT IN CIVIL ACTION** |
| | : | |
| | : | |

Filed on Behalf of Plaintiff:
Clifford Campbell

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC.**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:     (412) 545-3015
Fax No.:          (412) 540-3399
E-mail:           jward@jpward.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLIFFORD CAMPBELL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No.:** |
| | : | |
| **ST. MORTIZ SECURITY SERVICES,** | : | |
| **INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Clifford Campbell, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, St. Mortiz Security Services, Inc., of which the following is a statement:

## PARTIES

1.      Plaintiff, Clifford Campbell (hereinafter "Mr. Campbell"), is an adult individual who currently resides at 925 Woodward Avenue, McKees Rocks, Pennsylvania 15136

2.      Defendant, St. Mortiz Security Services, Inc. (hereinafter "SMSS"), is a Pennsylvania corporation with a place of business located at 4600 Clairton Boulevard, Pittsburgh, Pennsylvania 15235.

## NATURE OF THE ACTION

3.      This action arises under the Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*. and Section 1981 of the Civil Rights Act of 1866 ("Section 1981") 42

U.S.C. § 1981. Mr. Campbell avers that he was discriminated against on the basis of his race which subsequently resulted in his demotion and reduction of hours worked.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Mr. Campbell's discrimination claims pursuant to 28 U.S.C. § 1331.

5.      Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6.      Plaintiff filed a timely charge with the Pennsylvania Human Relations Commission ("PHRC") regarding his allegations on or about December 27, 2018, under PHRC case number 201802009.

7.      Since Plaintiff's filing of his PHRC claim, no determination has been made as to conciliation or finding of probable cause. Plaintiff files this Complaint pursuant to his rights under 43 Pa. Stat. Ann. § 962(c).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8.      Mr. Campbell began his employment at SMSS on or about July 6, 2018.

9.      Mr. Campbell is employed as a security guard with SMSS.

10.      Mr. Campbell is an African American man who is highly qualified to perform the duties of his position with SMSS.

11.      Shortly following Mr. Campbell was hired as a security guard at SMSS, the main supervisor, Henry Krumm, (hereinafter "Mr. Krumm") became sick, and Sean Boehm, (hereinafter "Mr. Boehm") the assistant supervisor had to step in and train Mr. Campbell.

12.     Mr. Krumm warned Mr. Campbell about Mr. Boehm, saying that there had been employees who quit because of Mr. Boehm's bad attitude toward them.

13.     Mr. Boehm is a Caucasian man.

14.     Upon Mr. Boehm becoming Mr. Campbell's trainer, Mr. Boehm would constantly curse at Mr. Campbell and verbally harass him.

15.     Mr. Boehm would regularly call Mr. Campbell "preacher" in a derogatory fashion and would tell Mr. Campbell that his prayers would not work.

16.     Mr. Boehm also physically threatened Mr. Campbell on more than one occasion.

17.      On or around July 23, 2018, Mr. Boehm told Mr. Campbell that he has "knocked out people bigger than you," referring to Mr. Campbell.

18.     On or around August 23, 2018, Mr. Boehm told Mr. Campbell that Mr. Boehm's "hands are deadly."

19.     On or around September 13, 2018, Mr. Boehm informed Mr. Campbell that he has once "broke a man's face," insinuating that he had the capability to do so to Mr. Campbell.

20.     The hostile work environment at Employer toward Mr. Campbell continued and worsened so much so that on or around November 6, 2018, Mr. Boehm threatened Mr. Campbell with his knife and aggressively stated that he knew "how to use it."

21.     On or about December 12, 2018, Mr. Campbell's days went down from 5 days per week to three days per week. Mr. Campbell's hours had been cut by Mr. Boehm.

22.     Upon finding out that his hours were cut, Mr. Campbell inquired of Mr. Boehm why this happened. Mr. Boehm then stated that Mr. Campbell's hours had gone to Carl Taylor, a new employee with less experience than Mr. Campbell.

23.     Mr. Boehm had a pattern of not harassing or treating any of the Caucasian employees in the hostile ways he treated Mr. Campbell, thereby giving rise to clear disparate treatment on the basis of his race.

**COUNT I**
**RACIAL DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**

24.     Mr. Campbell incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

25.     Under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. §2000e-2(a)(1).

26.     When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.,* 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green,* 36 L. E.D. 29 668 (1973).  See also *Makky v. Chertoff,* 542 F.3d 205, 214 (3d Cir. 2008).

27.     The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403,

410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

28.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA,* 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.,* 390 F.3d 760, 764 (3d Cir. 2004)).

29.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," *Morales v. Pnc Bank, N.A.,* 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

30.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id.*

31.     A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus.,* 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

32.     As an African American, Mr. Campbell is a member of a protected class under Title VII.

33.     Mr. Campbell was qualified for the position of Security Guard that he held with Employer.

34.     Furthermore, Mr. Campbell never received any negative or less than satisfactory reviews during his employment with SMSS.

35.     Mr. Campbell suffered various aforementioned adverse employment actions in the form of harassment and reduced hours of work.

36.     Mr. Campbell's Caucasian co-workers and subordinates were not subjected to the same harassment and hour reductions that Mr. Campbell was subjected to by SMSS.

37.     SMSS's harassment of Mr. Campbell and reduction of hours, because of his race, were undertaken intentionally and with reckless indifference to Mr. Campbell's federally protected right to be free from discrimination in employment decisions based upon his race.

38.     As a direct and proximate result of the aforementioned conduct, Mr. Campbell suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

<u>COUNT II</u>
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964 AND THE
PENNSYLVANIA HUMAN RELATIONS ACT**

39.     Mr. Campbell incorporates the allegations set forth in the paragraphs above as if fully set forth at length herein.

40.     The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hops., Co., LLC,* 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

41.     In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of race and/or national origin; (2) the

discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondeat superior liability." *Senador* at *25 (citing *Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001)).

42.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

43.     Because Complainant is able to state a prime facie case for race discrimination and hostile work environment under Title VII, so too will he be able to state such a claim under the PHRA.

44.     The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez,* 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

45.      Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 22 (1993)).

46.     Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

47.     As one of the only African American employees at SMSS, Mr. Campbell was subjected to harassment and reduction of hours because of his race.

48.     Mr. Campbell was regularly and pervasively harassed by Mr. Boehm, a supervisor at SMSS who verbally attacked and physically threatened Mr. Campbell, along with cutting Mr. Campbell's hours.

49.     Mr. Campbell was detrimentally affected by the discrimination as it caused mental anguish, anxiety, and damage to Mr. Campbell's professional reputation.

50.     The detrimental effect experienced by Mr. Campbell was reasonable under the circumstances.

51.     Mr. Campbell's supervisor, Mr. Boehm was an agent and employee of SMSS, therefore he was acting on behalf of, and under the authority of SMSS.

52.     As a direct and proximate result of the aforementioned conduct, Mr. Campbell suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

**COUNT IV**
**RACIAL DISCRIMINATION IN**
**VIOLATION OF SECTION 1981**

53.     Mr. Campbell incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

54.    42 U.S.C. § 1981(a) provides that:

"[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); see also, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

55.    Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

56.    SMSS cut Mr. Campbell's hours because of his race, and therefore deprived him the same right to make and enforce contracts as is enjoyed by white citizens, in direct violation of Section 1981.

57.    SMSS subjected Mr. Campbell to harassment within the workplace because of his race, and therefore deprived him of the full and equal benefit of all laws as is enjoyed by white citizens, in direct violation of Section 1981.

58.    SMSS's actions against Mr. Campbell were undertaken with wanton, willful and reckless indifference to Mr. Campbell's federally protected right to make and enforce contracts regardless of his race.

59.    As a direct and proximate result of the aforementioned conduct, Mr. Campbell suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay,

any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

**COUNT V**
**HOSTILE WORK ENVIRONMENT IN**
**VIOLATION OF SECTION 1981**

60.     Mr. Campbell incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

61.     To establish a § 1981 claim alleging a hostile work environment based on race, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his/her race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability, meaning the employer is responsible." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017)

62.     Mr. Campbell faced discriminatory treatment in the form of racially discriminatory threats and harassment from his supervisor throughout the course of his employment.

63.     The discriminatory threats and harassment Mr. Campbell was forced to endure were severe and pervasive.

64.     Due to the nature of the discriminatory hostile work environment, a reasonable person in like circumstances would be detrimentally affected.

65.     Furthermore, the employee who harassed and threatened Mr. Campbell, due to his race, was his Caucasian supervisor, Mr. Boehm.

66.     Mr. Boehm was an agent and employee of SMSS, therefore he was acting on behalf of, and under the authority of SMSS.

67.     Therefore, SMSS permitted, condoned, and perpetuated the racially hostile work environment to which Mr. Campbell was forced to endure, and therefore deprived him of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

68.     SMSS's actions against Mr. Campbell were undertaken with reckless indifference to Mr. Campbell's federally protected right to make and enforce contracts irrespective of his race.

69.     As a result of SMSS's race discrimination against Mr. Campbell, Mr. Campbell has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff, Clifford Campbell, hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC.**

Date: June 23, 2021

By: */s/ Joshua P. Ward*
  Joshua P. Ward (Pa. I.D. No. 320347)
  Kyle H. Steenland (Pa. I.D. No. 327786)

  J.P. Ward & Associates, LLC.
  The Rubicon Building
  201 South Highland Avenue
  Suite 201
  Pittsburgh, PA 15206
  Counsel for Plaintiff